UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00190-TBR

JUDY CARTWRIGHT, as Administratrix of
the Estate of Triston Lamark Taylor,                                         PLAINTIFF

v.

CHRISTIAN COUNTY, KENTUCKY, et al.,                                 DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon Motion by Plaintiff Judy Cartwright, ("Plaintiff"), as Administratrix of the Estate of Triston Lamark Taylor, for leave to file a Second Amended Complaint. [DN 49.] Defendants[1] have filed a Response, [DN 53], and Plaintiff has filed a Reply. [DN 54.] This matter is ripe for adjudication and, for the reasons that follow, **IT IS HEREBY ORDERED** that Plaintiff's Motion, [DN 49], is **GRANTED**.

**A. Background**

This case arises out of events which transpired at the Christian County Jail from September 2016 until April 2017. [DN 26, at 9-10.] Triston Lamark Taylor, ("Taylor"), was arrested on September 29, 2016 and charged with second degree assault. [*Id.* at 9.] As a result, he was taken to the Christian County Jail. [*Id.*] Thereafter, due to his mental health issues, Taylor was twice sent to the Kentucky Correctional Psychiatric Center, (the "Psychiatric Center"), in La Grange, Kentucky for the purpose of receiving psychiatric evaluations. [*Id.*] According to Plaintiff's first Amended Complaint, "[a]t approximately 8:37 a.m. on April 17, 2017, the Hopkinsville Ambulance Service received a call and was dispatched to the Christian County

---

[1] The current Defendants are: Christian County, Kentucky; Christian County Fiscal Court; Brad Boyd; Advanced Correctional Healthcare, Inc.; Lindsay Harper; Matthew Johnston; Christopher Marlar; Edward Ray Campbell; Steve Howard; Michael Walters; Lukas Keith Anderson; Katherine Bashor; Wesley Campbell; Jeric Thomas Rank; Steven Alan Kelley; Steven Curcio; Debra Ayres; Matthew Fuller; and Steve Langford.

1

Jail" and, upon arrival, the "paramedics found [Taylor] lying supine on the floor, unresponsive…He was transported by ambulance to Jennie Stuart Medical Center. The hospital called his time of death at 9:10 a.m. on April 17, 2017." [*Id.* at 10.] Apparently, when Taylor first arrived at the Christian County Jail, he weighed approximately 350 pounds and, on the day he died, he weighed 258 pounds. [*Id.* at 9-10.] In her Reply, Plaintiff indicates that the postmortem examination of Taylor, conducted "by the Western Kentucky Regional Medical Examiner's Office, indicated [Taylor] died of malnutrition/starvation…. [DN 54, at 2-3.] Additionally, the examination uncovered "injuries consistent with [Taylor] having been sexually assaulted. A sexual assault kit was collected at the time of the autopsy." [*Id.* at 3.] Finally, Plaintiff's first Amended Complaint also indicates that, while Taylor was housed at the Christian County Jail, one of the Defendants, Christopher Marlar, "shocked [Taylor] with a Taser device at least two times." [DN 26, at 15.]

As Administratrix of Taylor's Estate, Plaintiff, who is also Taylor's mother, filed the instant lawsuit on December 7, 2017. [DN 1.] Thereafter, she filed her first Amended Complaint on April 13, 2018. [DN 26.] Therein she lays out six claims: (1) deliberate indifference to serious medical needs; (2) deliberate indifference for failure to protect; (3) wrongful death; (4) survival; (5) negligence; and (6) excessive force and failure to protect. [*See id.* at 11-16.] Named in the first Amended Complaint are nineteen Defendants. Now, Plaintiff seeks leave of the Court to file a second Amended Complaint, which would add twenty-seven more individuals to the case. The merits of this Motion are discussed below.

### B. Legal Standard

Federal Rule of Civil Procedure 15(a) permits parties to amend their pleadings "as a matter of course," that is, without leave of the court, within "(A) 21 days after serving it, or (B) if

the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). Where such time has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule instructs that "[t]he court should freely give leave when justice so requires." *Id.*

The Sixth Circuit Court of Appeals has explained that "the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). Factors the district court may consider in reaching its determination include the following: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment…." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (internal quotation marks and citations omitted). Importantly, "[t]he decision as to whether justice requires the amendment is committed to the district court's sound discretion." *Moore*, 689 F.2d at 639 (citations omitted). A district court will only be found to have abused its discretion where it "fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent." *Id.* (citations omitted).

### C. Discussion

In the present case, Plaintiff's proposed second Amended Complaint does not seek to add any new claims, but rather, is an attempt by Plaintiff to add new Defendants. Specifically, Plaintiff seeks to add the following individuals as Defendants: Jacob Chesher, John Scott

Renshaw, Matthew Newby, Peter Scherm, Alan Rick Erickson, Ethan Davis, Adam Plock, Brandon Plesha, Cody Terry, David Clark, Adam Ellison, Lora Moore, Bradley Woosley, Bryan Smith, Kelli Carter Olenick, Jeremy Berg, Jason Brooks, Jonathan Davenport, Barbara Missey, Kimberly Pacheco, J.L. Hendricks, Dana Cherie Oldham, Anthony McIntosh, Caleb Hargrove, Levi Robinson, Cynthia Ellis, and Kayla Brown. [*See generally* DN 49-29.] Plaintiff alleges that all twenty-seven of these individuals were, during the relevant time period, working as employees and/or agents of either Christian County, Kentucky, Christian County Fiscal Court, or Christian County Jailer Brad Boyd (all three are already Defendants in this action). [*See id.*] Plaintiff's proffered reason for this Motion, and the necessity of these additional proposed Defendants, is as follows: "Plaintiff has moved to file a Second Amended Complaint to add additional jail personnel as defendants, whose identities were not known to Plaintiff at the time of the filing of the initial Complaint, *based on discovery produced by the Defendants*." [DN 54, at 1 (emphasis added).]

Defendants have filed a Response to Plaintiff's Motion and argue the following points: first, Plaintiff should have (or could have) included these twenty-seven individuals in her first Amended Complaint; second, only four of the twenty-seven proposed new Defendants "were indicated on the Surveillance Log on April 17, 2017, the day of [Taylor's] death;" third, the proposed second Amended Complaint lacks specific factual allegations and is therefore futile; and fourth, Defendants claim prejudice because of undue delay in filing the Motion. The Court will analyze each of these arguments in turn. [*See* DN 53.]

Plaintiff asked for leave of the Court to file her first Amended Complaint on March 16, 2018, [DN 24], and this Court granted that Motion on April 13, 2018. [DNs 25, 26.] Defendants contend that Plaintiff should have included all or at least some of the newly proposed Defendants

4

at that time. [*See* DN 53.] Notably though, the relevant discovery documents to which Plaintiff refers in her instant Motion contain certificates of service dated March 8, 2018 and March 9, 2018, respectively. [*See* DNs 53-1, at 10, 15 (Answers to Plaintiff's First Set of Interrogatories, and Requests for the Production of Documents, respectively).] Thus, even assuming that these documents were received by Plaintiff the next day, this would have left only a few days until the date on which Plaintiff filed her Motion to amend her Complaint the first time. In other words, although it appears that Plaintiff may have been in receipt of discovery naming these proposed individuals immediately prior to filing that first Motion, the Court finds no evidence of bad faith or any sort of dilatory tactics on behalf of Plaintiff, and Defendants do not appear to argue anything other than minor neglect. This small overlap is insufficient for the Court to consider denying Plaintiff's instant Motion.

The second argument advanced by Defendants is that only four of the twenty-seven proposed new Defendants were mentioned in the relevant Surveillance Log from April 17, 2017. Setting this aside, though, Plaintiff is explicit in her reasoning as to why she wishes to have these twenty-seven individuals added to the case: their names were disclosed in discovery and were not theretofore known to her. Indeed, upon review of Defendants' answers to Plaintiff's first set of interrogatories, the Court finds all twenty-seven individuals' names listed therein. [*See* DN 53-1, at 2-5.] And as noted above, these answers to Plaintiff's first set of interrogatories were not sent out until March of 2018. [*Id.* at 10.] Moreover, while most of these individuals might not have signed the Surveillance Log on the day Taylor died, Plaintiff's lawsuit stems from actions and inactions during the course of Taylor's period of incarceration at the Christian County Jail, and not just the day he died while in Defendants' custody. Accordingly, this argument must fail.

The third argument advanced by Defendants relates to the actual allegations Plaintiff has set forth in her proposed second Amended Complaint. Specifically, Defendants argue that "Plaintiff's proposed Second Amended Complaint does not include factual allegations against any of the 27 additional named Defendants," and that the statements which are given are "vague and do not refer to specific actions or inactions of the individuals Plaintiff attempts to name as defendants." [DN 53, at 2.] One of the factors a district court may consider in deciding whether to grant a motion for leave to amend complaint is whether the proposed amendment is futile. *See Coe*, 161 F.3d at 341. It is Defendants' position that the amendments included in Plaintiff's proposed second Amended Complaint are futile, because these portions of the proposed Complaint could not withstand a Rule 12(b)(6) motion to dismiss, and so the Court should not allow her to so amend. By way of response, Plaintiff argues that "Defendants are proceeding as if they had filed a Rule 12(b)(6) motion to dismiss," and not merely a Response to a Motion to amend complaint. [DN 54, at 3-4.] Further, Plaintiff argues that she has pleaded, with sufficient specificity, her claims against all of the existing Defendants, as well as the twenty-seven proposed ones, and so the Court should discount Defendants' argument here. The Court agrees that Plaintiff has sufficiently alleged conduct on the part of the twenty-seven proposed Defendants to withstand a Rule 12(b)(6) motion.

The Sixth Circuit Court of Appeals has explicitly noted that "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dept. of Treasury, State of Michigan, Rev. Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)). Because Defendants have raised this issue, the Court will now analyze Plaintiff's proposed second Amended Complaint under Rule 12(b)(6).

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir. 1999). Thus, "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion should be denied. *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means that the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The concept of "plausibility" denotes that a complaint should contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. The element of plausibility is met "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But where the court is unable to "infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).

The Court finds that Plaintiff's proposed second Amended Complaint meets the standard set forth in Rule 12(b)(6) and the relevant case law. While Defendants argue that the proposed second Amended Complaint lacks sufficient specificity with respect to the newly proposed Defendants, the Court finds that the document passes the required threshold, namely, that factual content has been pleaded "that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* at 678.

As noted above, Plaintiff has laid out six claims in this case: (1) deliberate indifference to serious medical needs; (2) deliberate indifference for failure to protect; (3) wrongful death; (4) survival; (5) negligence; and (6) excessive force and failure to protect. [*See* DN 26, at 11-16.] In her proposed second Amended Complaint, Plaintiff identifies each Defendant (including the newly proposed ones), and indicates that all of them were working as employees and/or agents of Christian County, Kentucky, Christian County Fiscal Court, and/or Brad Boyd, (the Christian County Jailer), and were working at the Christian County Jail during the relevant time period. [DN 49-29, at 9-19.] Further, Plaintiff, as in her previous Complaints, lays out specific facts concerning Taylor, his underlying arrest, his history of mental illness, his trips to the Psychiatric Center during his stay at the Christian County Jail, his death, and the postmortem examination. [*Id.* at 19-21.] She also levies specific allegations concerning Defendants' alleged deliberate indifference towards Taylor's health and safety during his period of incarceration at Christian County Jail, alleging that these failures led to Taylor being sexually assaulted, to various

violations of his constitutional rights, to inadequate medical care relating to his mental illnesses and, finally, to his death while in Defendants' custody. [*Id.*] To be sure, Plaintiff refers to all of Defendants by the general name, "Defendants," but the allegations are, in the end, sufficiently specific "to raise a right to relief beyond the speculative level." *Twombly*, 550 U.S at 555.

One of Defendants' main contentions is that Plaintiff's claims in her proposed second Amended Complaint are too general to provide any "insight as to how the 27 individuals could have infringed upon [Taylor's] constitutional rights." [DN 53, at 4.] However, this is not the case. In addition to the specific facts laid out by Plaintiff concerning Taylor, Plaintiff also alleges the following: Defendants "acted with deliberate indifference to [Taylor's] health and safety by failing to protect [him] from sexual assault, failed to properly train and supervise the conduct of the personnel of the Christian County Jail and Advanced Correctional Healthcare, Inc., failed to adopt policies and procedures to prevent violations of his constitutional rights;" that Defendants "failed to establish policies and procedures for the screening, hiring, employment, retention, supervision, training, and conduct of the employees, officers, deputies and any medical staff at the Christian County Jail;" and that Defendants "failed to adhere to training, policies and procedures adopted to prevent violations of his constitutional rights." [DN 49-29, at 20.] Plaintiff further alleges that "Defendants were unresponsive to the serious medical needs of [Taylor] and failed to secure necessary medical attention resulting in a denial of medical care to [Taylor], resulting in his death," [*Id.* at 22]; and that "Defendants knew [Taylor] was at a substantial risk of serious harm and assault due to his mental health history" because they actually took him to the Psychiatric Center during his time of incarceration. [*Id.* at 23.]

Defendants' final argument relates to a perceived undue delay by Plaintiff in filing this Motion: "it has been more than one year since [Taylor's] death, [and] Plaintiff has had an

9

abundance of time to conduct an investigation and discover who the alleged responsible parties are." [DN 53, at 5.] Further, Defendants argue that Plaintiff "should not be allowed to add every single employee who stepped foot in the Jail during [Taylor's] incarceration simply because she failed to perform an investigation during the year in which she was required to do so by law." [*Id.*]

Sixth Circuit precedent is clear that "[o]rdinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Only where the delay has become "undue" or "prejudicial," thereby "placing an unfair burden on the opposing party, will the Court deny leave to amend on these grounds. *See id.* (internal quotation marks omitted); *see also Tefft*, 689 F.2d at 639 n.2 ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading."). The Court does not find any delay by Plaintiff in this case to be undue. This lawsuit was only filed approximately six months ago, and this Motion has been brought only three months after Plaintiff obtained discovery identifying the twenty-seven individuals she now wishes to add to this case. *See Tefft*, 689 F.2d at 639 n.2 (citing *Buder v. Merrill Lynch, Pierce, Fenner & Smith*, 644 F.2d 690, 694 (8th Cir. 1981) with approval, where the Eighth Circuit Court of Appeals noted that, even with a two and one-half year delay in requesting amendment, prejudice must still be shown). Furthermore, there is no indication that Plaintiff's proposed second Amended Complaint is designed to harass Defendants, is some sort of dilatory tactic, or has been otherwise conceived to prejudice Defendants at all. Defendants only point to an alleged failure of Plaintiff to conduct a sufficiently thorough investigation into who exactly was present at the Christian County Jail during Taylor's stay there. Notably though, Defendants do not allege with specificity any sort of prejudice they would suffer if this Motion is granted, and the Court

will allow Plaintiff to amend her Complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

### D. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Plaintiff's Motion, [DN 49], is **GRANTED**.

The Clerk is directed to file Plaintiff's Second Amended Complaint, [DN 49-29], as of the date of entry of this Order.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 20, 2018

cc: Counsel of Record